(February 23, 1923.)

WILLIAM P. GUTHRIE and ARTHUR M. BOWEN, Co-
partners Under the Firm Name of GUTHRIE &
BOWEN, Respondents, v. LEWIS W. ENSIGN,
MRS. LEWIS ENSIGN, His Wife, BOISE DEVELOP-
MENT CO., a Corporation, THE WYOMING HOLD-
ING CO., a Corporation, DEAN PERKINS, Receiver
of WYOMING HOLDING CO., M. F. DEAN, and
B. F. OLDEN, Respondents, Appellants; NATIONAL
SURETY COMPANY, a Corporation, Intervenor,
Appellant, Respondent.

[213 Pac. 354.]

SURETY — PAYMENT OF INDEMNITY — SUBROGATION — LAND SUBJECT TO
MORTGAGE—PURCHASER—RIGHT TO ATTACK MORTGAGE—JUDGMENT
CREDITOR.

1. A surety on the bond of a state officer, having paid the
state the amount of such officer's defalcation, is entitled to be
subrogated to the rights of the state as to a note and mortgage
fraudulently obtained from the state by such officer by unlaw-
fully using state funds in purchasing the assignment thereof
from the state, and such right of subrogation may be enforced
against an assignee of such note and mortgage who does not
show himself to be a purchaser thereof in good faith and for
value and without notice of such officer's defective title.

2. One who purchases land subject to a mortgage and deducts
the amount thereof from the purchase price is estopped to deny
the validity of such mortgage.

APPEAL from the District Court of the Fourth Judicial
District, for Blaine County. Hon. H. F. Ensign, Judge.

Action to foreclose a mortgage. Judgment for plaintiffs.
Defendants and intervenor appeal. *Reversed,* with direc-

Publisher's Note.

1. Subrogation of sureties to remedies against creditor as in-
cluding remedies against third persons, see notes in 13 **Ann. Cas.**
429; 14 **L. R. A.**, N. S., 155; 46 **L. R. A.**, N. S., 557.

36 Idaho.—43

tions to enter judgment of foreclosure in behalf of intervenor.

Hawley & Hawley, for Intervenor and Appellant National Surety Co.

Where a state treasurer embezzles money of the state intrusted to his official care, and with it purchases of the state notes and mortgages of which it is payee and mortgagee, and causes the assignments to be made in the name of a third party, a constructive trust arises in favor of the state, impressed upon said notes and mortgages, and such third person, and the state treasurer, when the instruments are afterward assigned to him, holds the legal title in trust for the state, which is the equitable owner, entitled to require redelivery, and to enforce such notes and mortgages against the makers and mortgagors. (1 Pomeroy, Eq. Juris., 4th ed., sec. 155; vol. 3, secs. 1044, 1049, 1051, 1058; *Bellevue State Bank v. Coffin,* 22 Ida. 210, 125 Pac. 816; *Davenport v. Burke,* 30 Ida. 599, 167 Pac. 481; *Russell v. Bank of Nampa,* 31 Ida. 59, 169 Pac. 180; *Martin v. Smith,* 33 Ida. 692, 197 Pac. 823; *Pioneer Min. Co. v. Tyberg,* 215 Fed. 501, 131 C. C. A. 549, L. R. A. 1915B, 442, and note.)

The *cestui que trust* may follow such trust property into the hands of any holder other than a *bona fide* purchaser for value and without notice. (3 Pomeroy, Eq. Juris., 4th ed., sec. 1051.)

One into whose hands such property comes is required to set up *bona fides* as a defense, and plead such defense with particularity in order to permit evidence thereof to be admitted. (*Boone v. Chiles,* 10 Pet. (U. S.) 177, 211, 9 L. ed. 388; *Baynard v. Norris,* 5 Gill (Md.), 468, 46 Am. Dec. 648; 2 Pomeroy, Eq. Juris., 4th ed., secs. 735 et seq., 784, 785; *Ewald v. Hufton,* 31 Ida. 373, 173 Pac. 247; *Johansen v. Looney,* 31 Ida. 754, 176 Pac. 778; *Weber v. Rothchild,* 15 Or. 385, 15 Pac. 650.)

And the burden of proof is upon the person claiming to be such purchaser, particularly where the trust is shown once to have existed, or that facts existed sufficient to put a

prudent man upon inquiry. (39 Cyc., "Trusts," 570, 631; C. S., secs. 5919, 5922, 5926; 3 R. C. L., "Bills and Notes," pp. 1033–1038; *Weber v. Rothchild, supra; Salisbury v. Barton*, 63 Kan. 552, 66 Pac. 618.)

When a note is payable to a named person or order, and is transferred without indorsement, it is not deemed negotiated within the definition of a holder in due course until it is actually indorsed; the transferee has only such title as his transferor had, and cannot claim the benefits to which a holder in due course is entitled. (C. S., secs. 5917, 5919, 5925; 3 R. C. L., "Bills and Notes," p. 1034.)

The transferee is charged with constructive notice, which is conclusive (1) if he have information of extraneous facts sufficient to put a prudent man upon inquiry, and fails to make inquiry; (2) if he have such information, and inquiry would necessarily lead to discovery, whether he in fact does or does not make inquiry. (2 Pomeroy, Eq. Juris., 4th ed., pp. 1145, 1152, 1154; C. S., sec. 5923; 3 R. C. L., "Bills and Notes," p. 1075; *Redfield v. Wells*, 31 Ida. 415, 173 Pac. 640.)

Where the surety on the bond of a state treasurer pays the amount of such official's defalcation, which includes the money employed to secure from the state such notes and mortgages, the surety is subrogated to all the rights of the state, and is entitled to foreclosure in its favor. (5 Pomeroy, Eq. Juris., 4th ed., secs. 2343 et seq., 2345, pp. 5206, 5207; *In re Bank of Nampa*, 29 Ida. 166, 157 Pac. 1117; *Wilson v. Wilson*, 6 Ida. 597, 57 Pac. 708; *National Surety Co. v. State Sav. Bank*, 156 Fed. 21, 13 Ann. Cas. 421, and note, 84 C. C. A. 187, 14 L. R. A., N. S., 155; *American Bonding Co. v. State Sav. Bank*, 47 Mont. 332, 133 Pac. 367, 46 L. R. A., N. S., 557, and note.)

Upon trial before the court, the court must make written and separate findings of fact and conclusions of law upon every material issue raised by the pleadings either of plaintiff, defendant or intervenor. (C. S., secs. 6866, 6867; *Pittock v. Pittock*, 15 Ida. 426, 98 Pac. 719; *Stoneburner v. Stoneburner*, 11 Ida. 603, 83 Pac. 938; *Sterret v. Sweeney*,

15 Ida. 416, 128 Am. St. 68, 98 Pac. 418; *Fehr v. Haworth,* 33 Ida. 96, 190 Pac. 248; *American Min. Co. v. Trask,* 28 Ida. 642, 156 Pac. 1136; *Carson v. Thews,* 2 Ida. 176, 9 Pac. 605; *Standley v. Flint,* 10 Ida. 629, 79 Pac. 815; *Wood v. Broderson,* 12 Ida. 190, 85 Pac. 490; *State v. Baird,* 13 Ida. 126, 89 Pac. 298; *Berlin M. Works v. Dehlbom Lbr. Co.,* 29 Ida. 494, 160 Pac. 746.)

A grantee of a mortgagor, taking subject to the mortgage, the grantee's receiver, and a judgment creditor of the grantee, who secured judgment lien after the conveyance, are estopped to deny the validity of the mortgage, especially in the absence of allegations or proof, if alleged, of fraud in its inception. (*Hadley v. Clark,* 8 Ida. 497, 69 Pac. 319; *Burke etc. Livestock Co. v. Wells, Fargo & Co.,* 7 Ida. 42, 60 Pac. 87; *Moore v. Boise Land & Orchard Co.,* 31 Ida. 390, 173 Pac. 117.)

S. T. Schreiber and C. S. Hunter, for Appellants, Dean Perkins, Receiver, and M. F. Dean.

The court erred in not determining all material issues raised by the pleadings. (*Standley v. Flint,* 10 Ida. 629, 79 Pac. 815; *Wood v. Broderson,* 12 Ida. 190, 85 Pac. 490; *Uhrlaub v. McMahon,* 15 Ida. 346, 97 Pac. 784; *Handley v. Sprinkle,* 31 Mont. 57, 77 Pac. 296; *Henderson v. Reynolds,* 57 Or. 186, 110 Pac. 979; Perry on Trusts, sec. 161; 39 Cyc. 1043; *Jenkins v. Frink,* 30 Cal. 586, 99 Am. Dec. 134; Pomeroy, Eq. Jur., sec. 1049.)

The judgment or decree is erroneous and void for the reason that the same is not supported by proper findings of fact and conclusions of law, and the evidence in the case. (*State v. Baird,* 13 Ida. 126, 89 Pac. 298; *Later v. Haywood,* 14 Ida. 45, 93 Pac. 374; Ogden on Negot. Ins., sec. 95; *Cole Banking Co. v. Sinclair,* 34 Utah, 454, 98 Pac. 411; *Helmer v. Krolick,* 36 Mich. 371; *Limerick Nat. Bank v. Adams,* 70 Vt. 132, 40 Atl. 166.)

The court erred in not making the findings of fact and conclusions of law responsive to the issues raised by the pleadings in the case. (*Carson v. Thews,* 2 Ida. 176, 9

Pac. 605; *Dillon v. Cleveland,* 32 Utah, 1, 88 Pac. 670; *Hull-hurst v. Scharner,* 15 Neb. 57, 17 N. W. 259; *Hodson v. Eugene G. Co.,* 156 Ill. 397, 40 N. E. 971; Ogden on Negot. Ins., sec. 143; *Green v. Turner,* 80 Fed. 41; Wait on Fraud. Convey., sec. 383; *Tilton* v. *Cofield,* 93 U. S. 168, 23 L. ed. 860; *Wilcoxen v. Morgan,* 2 Colo. 473; Wade on Notice, sec. 377.)

The court erred in not separately stating its findings of fact and conclusions of law. (*Smith v. Faris-Kesl Co.,* 27 Ida. 407, 150 Pac. 25; *Van Loben Sels v. Bunnell,* 120 Cal. 680, 53 Pac. 266; Jones on Mortgages, 6th ed., sec. 469; *Stansel v. Roberts,* 13 Ohio, 148, 42 Am. Dec. 193; C. S., sec. 6867.)

Subrogation being a doctrine of purely equitable origin and nature in its operation is never impressed so as to defeat or interfere with the superior or equal equities of third persons growing out of express contracts. (Pomeroy, Eq. Jur., sec. 1419, note 1; Sheldon on Subrogation, secs. 1, 63–65.)

The most favorable construction to be placed, then, on the transaction is that it was an assignment. An assignment implies a continued existence of the debt and the equitability does not then arise. (*Lamb v. Montague,* 112 Mass. 352; *Gatewood v. Gatewood,* 75 Va. 407; *Frisbee v. Frisbee,* 86 Me. 444, 29 Atl. 1115.)

This right cannot be availed of by one who had no agreement or understanding for subrogation nor any just expectation that he would have like security for money paid by him on an existing mortgage. (*Bigelow v. Scott,* 135 Ala. 236, 33 So. 546; *Tait v. American Free Hold Mortgage Co.,* 132 Ala. 193, 31 So. 623.)

If the debt is the debt of the person who paid it, it is a debt which he has covenanted, his payment of which raises no right of subrogation, but is simply a performance of his own obligation or covenant. (*Kellogg v. Colby,* 83 Iowa, 513, 49 N. W. 1001; *Brown v. Sheldon Bank,* 139 Iowa, 83, 117 N. W. 289; *Zimmerman v. Chelsea Savings Bank,* 161 Mich. 691, 125 N. W. 424; *Dumont v. Fry,* 14 Fed. 293.)

E. M. Wolfe, for Respondent.

The Wyoming Holding Co. purchased the property covered by these mortgages from the Boise Investment Co., subject to said mortgages so expressed in their deeds.

The Boise Investment Co. acquired the property from Wood and Ensign subject to said mortgages so expressed in the deeds. Neither of these corporations can question the validity of the mortgages subject to which they hold the property. (*Hadley v. Clark,* 8 Ida. 497, 69 Pac. 319; *Western Loan & Savings Co. v. The Kendrick State Bank,* 13 Ida. 331, 90 Pac. 112.)

If plaintiffs obtained the notes and mortgages without notice of fraud and for a valuable consideration, then the fact that Allen secured the notes with money embezzled from the state cannot affect the title which he afterwards transferred to the plaintiffs. (*Fidelity Mutual Life Ins. Co. v. Clark,* 203 U. S. 64, 27 Sup. Ct. 19, 51 L. ed. 91; *Moore v. Moore,* 112 Ind. 149, 2 Am. St. 170, 13 N. E. 673.)

This assignment by the state bore much the same weight or presumption of good faith that a patent from the United States conveys to an intended purchaser from the patentees. (*United States v. Detroit Timber & Land Co.,* 200 U. S. 321, 26 Sup. Ct. 282, 50 L. ed. 499; *Fidelity Mutual Life Ins. Co. v. Clark, supra.*)

"An assignment of a note passes the whole interest of the assignor, including every remedy and security available by the assignor as incident thereto, though not especially named in the instrument of assignment." (*Swenson v. Stoltz,* 36 Wash. 318, 78 Pac. 999; *Munson v. Exchange Nat. Bank,* 19 Wash. 125, 52 Pac. 1011.)

The intervenors must make the same kind of case that they would have to make had they commenced a replevin action against the plaintiffs. They must recover upon the strength of their own title rather than upon the weakness of the defendant's title. (*Carstensen & Anson Co. v. G. G. Wright,* 25 Ida. 492, 138 Pac. 830.)

DUNN, J.—This action was brought by plaintiffs to foreclose a mortgage which was given by Ensign and wife to the state of Idaho on certain lands in Blaine county to secure a loan of $4,500. Plaintiffs claim title to the note and mortgage in this case by reason of an assignment thereof to one W. H. Gibberd by the state of Idaho, an assignment by Gibberd to O. V. Allen, former state treasurer, and an assignment by Allen to plaintiffs. At the time of commencing the action plaintiffs had not obtained possession of the note and mortgage, but alleged the same to be in the possession of one B. F. Olden, who was made a defendant.

The owner of the land at the time the action was commenced was the Wyoming Holding Company, a corporation organized under the laws of Idaho, of which Dean Perkins, one of the defendants, was the receiver. Defendant M. F. Dean is a judgment creditor of said Wyoming Holding Company.

Dean Perkins, as receiver of the Wyoming Holding Company, answering plaintiffs' complaint, admitted the execution and delivery of the note and mortgage, but denied that the same were due, or that they had ever been assigned to the said Gibberd, or that they were assigned to plaintiffs for valuable or any consideration, or that prior to the commencement of this suit the said Gibberd, for any consideration whatever, assigned said note and mortgage, or that the plaintiffs were the holders of said note and mortgage. Said answer further alleged that the note and mortgage sued on in this case were fraudulent and void by reason of certain false representations made at the time of obtaining said loan from the state of Idaho, and that prior to the time of filing this suit the plaintiffs had known of the invalidity of said note and mortgage and of the fraudulent manner in which the same were executed; that the said W. H. Gibberd, through whom plaintiffs claim title, was at the time plaintiffs claimed he executed his assignment of said note and mortgage restrained by injunction from executing and delivering the same and that therefore his attempted act of assignment was fraudulent and void.

Said answer further alleges that the assignment from the state of Idaho to the said Gibberd was fraudulently procured and that no consideration passed from the said Gibberd to the said state of Idaho therefor, and that this defect in the title to said note and mortgage was known to plaintiffs at the time they claim to have acquired title thereto.

The National Surety Company by leave of court filed its complaint in intervention alleging that during O. V. Allen's incumbency of the office of state treasurer it became a surety on his official bond in the sum of $200,000; that the said Allen defaulted in the sum of $145,264.34, for which sum judgment was obtained against said surety company and by it paid to the state; that the assignment of said note and mortgage was obtained by the said Gibberd by payment to the state of Idaho of $4,975.15, which was part of a trust fund in the hands of the said Allen, which he had unlawfully taken from the state treasury and delivered to the said Gibberd; that the said trust fund of $4,975.15 was included in the sum of $145,264.34, which was paid by the intervenor to the state of Idaho because of the defalcation of said O. V. Allen as treasurer of said state; that some time after September 19, 1914, the date on which the said Gibberd obtained the assignment of the said note and mortgage from the state of Idaho, the said "Gibberd assigned said promissory note and mortgage to the plaintiffs herein, but that said assignment was without consideration and that said promissory note and mortgage were not at the time of said assignment, nor have they been since, delivered to said plaintiffs, and that said promissory note and mortgage and said assignment thereof were taken by said plaintiffs with notice and knowledge of the facts herein stated. That by reason of said facts herein stated said plaintiffs hold any and all rights, titles, interests and estates which they may have or claim to have in and to said promissory note and mortgage as trustees for the use and benefit of said state of Idaho and for the use and benefit of this intervenor."

Said complaint in intervention further alleges matters proper to be alleged in a complaint to foreclose said mort-

gage and prays that the intervenor may be "subrogated to all the rights, interests, claims, titles and estates in and to said mortgaged premises and in and to said promissory note and mortgage of the state of Idaho and of the said O. V. Allen as state treasurer of said state of Idaho and his successors in office," for judgment for the amount of the note and for the usual decree of foreclosure.

The receiver of the Wyoming Holding Company answered the complaint in intervention and denied that the sum of $8,844.68, the sum which it is claimed Allen took from the state treasury and caused to be paid to the state of Idaho for the assignment of the notes and mortgages given by Ensign and one George B. Wood, was a part of the sum of $145,264.34 paid by the National Surety Company to make good the shortage of O. V. Allen as state treasurer, or that said sum was a trust fund, or that it was extracted by the said Allen from funds belonging to the state of Idaho and embezzled by him, or that the intervenor is the lawful owner of the promissory note and mortgage sued on in this action. Said answer further alleges false and fraudulent representations which the receiver claims to have been made by Ensign in the procuring of said loans and certain false and fraudulent representations made by Allen and his agents when the Wyoming Holding Company acquired said mortgaged lands, and reliance by the said company on said false and fraudulent representations, and that said note and mortgage were not *bona fide* instruments, and that the state of Idaho is estopped by the acts and conduct of its agents from claiming any right, title or interest in said premises, and that said intervenor is also estopped thereby.

Substantially the same matters are set up in the answer to the complaint and the complaint in intervention by M. F. Dean, judgment creditor of said Wyoming Holding Company, as are pleaded by the receiver in his answers to the plaintiffs' complaint and the complaint in intervention.

In addition to such matters Dean sets up a judgment obtained by him against the Wyoming Holding Company, that an abstract of said judgment was filed in the office of

the clerk of the ·district court of Blaine county, and that the same became a lien upon the lands described in said mortgage prior to any other lien involved in this action.

For lack of information or belief plaintiffs deny all of the allegations of the intervenor with regard to the embezzling of the trust fund of $8,844.68 by O. V. Allen, or the payment of a part thereof to the state of Idaho for the assignment of said note and mortgage. They admit the assignment by Gibberd to Allen and by Allen to plaintiffs, but deny that there was no consideration, or that they had any knowledge or information "that the state of Idaho or the intervenor had any claims, rights or interest in the said note and mortgage whatsoever, and deny that they had any notice or knowledge of any facts similar to those set out in the complaint and intervention or facts that would in any way lead or tend to make them believe that the said note and mortgage were otherwise than genuine and in good faith and allege the fact to be that these plaintiffs purchased the said note prior to its maturity and for full value, without any notice of any defect in the title."

Plaintiffs deny also that the intervenor is the owner of the note and mortgage in controversy.

Judgment was for plaintiffs, and defendants Dean and the receiver and the intervenor appeal.

The allegations of fraud made by Dean and the receiver, so far as they affect the rights of such parties, are wholly without proof. If a fraud was perpetrated on the state in procuring this loan, as seems probable, that is nothing to these parties, since they failed to show that their rights have in any manner been affected thereby. And if, as claimed by Dean, the Wyoming Holding Company relied upon representations made by Allen and his agents, or on representations as to the value of the land made by Ensign in procuring the loan, it did so at its peril, and the receiver cannot now avoid the responsibility that results from the purchase of this land by the Wyoming Holding Company subject to the mortgage given, by Ensign. The Wyoming Holding Company having bought subject to the mortgage and pre-

sumably deducted it from the purchase price is estopped to deny its validity. (*Hadley v. Clark*, 8 Ida. 497, 69 Pac. 319; *Burke Land & Livestock Co. v. Wells, Fargo & Co.*, 7 Ida. 42, 60 Pac. 87; *Moore v. Boise Land & Orchard Co.*, 31 Ida. 390, 173 Pac. 117.)

Conceding for the moment, but not deciding, that Dean as judgment creditor of the Wyoming Holding Company might attack the mortgage, he has wholly failed to show that the mortgage given by Ensign was fraudulent.

The loan to Ensign was not, as claimed by Dean and the receiver, fictitious in any sense, except that probably in obtaining the loan a fictitious value was given to the property covered by the mortgage. It was very real in every other respect in that a real note was given by a real person and secured by a real mortgage on real land, and the state parted with $4,500 of real money therefor. Whether the state would ultimately have suffered loss if it had been required to foreclose we cannot know, but the fact remains that it did not lose by reason of this loan because the intervenor paid the loss caused by Allen's defalcation.

The evidence is undisputed that the assignment of this note and mortgage to Gibberd was procured from the state by the payment therefor of $4,975.15 of the state's money unlawfully taken from the state treasury by Allen and placed in the hands of one Olden. Gibberd paid nothing of his own for the note and mortgage and did not receive them. They were taken by Olden, and at the time of commencing this action plaintiffs had not received them.

Plaintiffs claim to have taken the assignment of the note and mortgage in this case from O. V. Allen in good faith and for value and without notice of any defect in Allen's title thereto. But it is urged by the intervenor that under the pleadings of plaintiffs they were not entitled to offer evidence to sustain their contention if they had attempted to do so. They did in fact offer no direct evidence to sustain their contention, the only evidence bearing thereon in plaintiffs' behalf being such as was drawn from Mr. Guthrie on his cross-examination by the intervenor and his subsequent

examination by his own counsel and counsel for Dean and the receiver. We think the position of the intervenor as to the insufficiency of the pleadings of plaintiffs to entitle them to offer proof in support of the assignment to them must be sustained, but we prefer to determine the matter on the case presented as if the pleadings were sufficient in the particular mentioned.

Idaho Compiled Statutes contain the following provisions with regard to promissory notes:

"Sec. 5919. A holder in due course is a holder who has taken the instrument under the following conditions: . . . .

"3. That he took it in good faith and for value.

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

"Sec. 5922. The title of a person who negotiates an instrument is defective within the meaning of this chapter when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates·it in breach of faith, or under such circumstances as amount to a fraud.

"Sec. 5923. To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

"Sec. 5926. Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

It was shown beyond question that the instruments in controversy in this case were obtained from the state· of Idaho by O. V. Allen by fraud. When this was shown the burden

then rested upon plaintiffs, as provided by C. S., sec. 5926, to prove that they acquired title thereto as holders in due course, that is, that they took the instruments in good faith and for value and that at the time they received the assignment from Allen they had no notice of any defect in his title. There is no showing in the record that they had actual knowledge of the fraud that Allen had perpetrated on the state in obtaining the assignment of these instruments, but if they had knowledge of facts and circumstances sufficient to put a reasonably prudent man upon inquiry and they wholly neglected to make any inquiry they must be presumed to have had actual notice of such defective title. (Pomeroy's Equity Jurisprudence, pp. 1145, 1152; *Redfield v. Wells,* 31 Ida. 415, 173 Pac. 640.)

The facts known to the plaintiffs at the time they received this assignment were these: They knew that their client, O. V. Allen, from whom they received the assignment, was at that time serving in the Idaho state penitentiary for the felony committed by him in the embezzlement of $145,000 of state money while he was state treasurer. The assignments received by Allen from Gibberd and by plaintiffs from Allen showed on their face that the note and mortgage assigned to plaintiffs were securities that had been given to the state of Idaho. These assignments from Gibberd to Allen and from Allen to plaintiffs were made by separate written instruments and not by indorsement on the note and mortgage and the note and mortgage were not at that time delivered to plaintiffs, and up to this time have not been indorsed to plaintiffs. Notwithstanding this information, plaintiffs made no effort whatever to learn the facts with regard to Allen's title, but about three weeks after the date of Allen's assignment brought this foreclosure action. From the record before us it is not to be doubted that reasonable inquiry on the part of the plaintiffs would have disclosed to them the gross fraud by which Allen obtained the assignment from the state. Is it possible that a reasonably prudent man would have taken such assignment and have given value therefor under such circumstances as we have

shown in this case without making the slightest effort to ascertain whether or not Allen had come into possession of the note and mortgage honestly? We think not, and therefore hold that plaintiffs were not purchasers in good faith and for value and without notice of the defective title of Allen. The finding of the trial court that plaintiffs were such purchasers is without sufficient evidence to sustain it.

The fraud of Allen in obtaining the assignment of this note and mortgage in the manner in which he did impressed them with a constructive trust in favor of the state, and the state was entitled to a return of said instruments and to have them enforced in its behalf as fully as if said fraudulent assignment had never been procured from the state. (Pomeroy's Equity Jurisprudence, 4th ed., vol. 1, sec. 155; vol. 3, secs. 1044, 1049, 1051, 1058; *Davenport v. Burke,* 30 Ida. 599, 167 Pac. 481; *Martin v. Smith,* 33 Ida. 692, 197 Pac. 823; *Pioneer Min. Co. v. Tyberg,* 215 Fed. 501, 131 C. C. A. 549, L. R. A. 1915B, 442, and note.)

The intervenor, National Surety Company, having complied with its contract of indemnity by the payment of Allen's indebtedness to the state, including the sum involved in this case, which was fraudulently taken by Allen from the state treasury and used in purchasing the assignment of the note and mortgage in controversy, is entitled to be subrogated to all the rights of the state arising out of said trust and to enforce the payment of said note by the foreclosure of said mortgage in its behalf as fully as the state of Idaho might have done, and said plaintiffs hold the legal title to said note and mortgage in trust for said intervenor, National Surety Company. (Pomeroy's Equity Jurisprudence, 4th ed., vol. 5, sec. 2343 et seq., sec. 3245, pp. 5206, 5207; *In re Bank of Nampa,* 29 Ida. 166, 157 Pac. 1117; *Wilson v. Wilson,* 6 Ida. 597, 57 Pac. 708; *National Surety Co. v. State Savings Bank,* 156 Fed. 21, 13 Ann. Cas. 421, 84 C. C. A. 187, 14 L. R. A., N. S., 155, and note.)

Complaint is made by Dean and the receiver and the intervenor that the trial court did not make findings on all material issues and that its findings and conclusions are not

separately stated, and there is ground for the complaint. The statutes governing this matter are quite plain, and much confusion and dissatisfaction could be avoided if they were complied with. We think, however, that it will not be necessary to send the case back for additional findings.

Just complaint is also made that the court followed the very bad practice of reserving its rulings on many important questions during the trial, particularly as to the admission of evidence, and finally disposed of the case without indicating what its rulings were.

The judgment is reversed and the trial court is directed to enter judgment that said intervenor is the owner of said note and mortgage and entitled to the possession thereof, and that said intervenor have and recover the amount of said note, and further that the usual decree of foreclosure be entered in behalf of said intervenor. Costs awarded to intervenor.

William A. Lee and William E. Lee, JJ., concur.